Follett, J.
On June 11, 1874, Robert W. Hubbard, as sheriff, held the $442.35. The mortgage lien and costs had been paid, and George Martin would have received this money had not William Elden become a party to the action and set up a superior claim to it.
Several questions presented by the plaintiffs in error are unimportant, by reason of the fact that, as sheriff, Hubbard then held the money for the rightful claimant, and it did not affect Hubbard’s liability whether the court ordered the money paid to Martin or to Elden. The court found Elden to be the rightful claimant.
The question is, did this order to loan this money, and the acts of the sheriff done by reason of that order, release either the sheriff’s liability to pay the money to the rightful claimant of the same, or release his sureties from their liability on the bond ?
It is claimed that the court had no power to make the order to loan; if this be so, the making the order did not release either the sheriff or the sureties.
The order directed the sheriff to loan the money on interest and take mortgage security for the same on real estate in Jackson county of double the value of the money in his hands, exclusive of buildings thereon.
As the money was not loaned in accordance with the order (and there is no averment or claim that it was), the question does not arise as to whether a strict compliance with the order would- have released the liability of the sheriff’ or that of his sureties. Elden is not presumed to *385 have consented to any thing but a strict compliance with the terms of the order.
Hubbard and his sureties in their answer do not deny the averment of the petition that on June 11, 1874, the $442.35 were in the hands of Hubbard as such sheriff; and they do not show that he invested, or tried to invest, any part of that money, as directed by the order; and they do not try to account for any part of the $442.35. This leaves their liability in full force, though the money was not demanded until the sheriff’s term of office expired.. See King v. Nichols, 16 Ohio St. 80; Brobst v. Skillen, Ib. 382. But on the trial of the case Elden showed in his evidence that, on June 13, 1874, two days after the entry of the order to loan, Hubbard, as sheriff, may have loaned to one Andrew J. Dever this $442.35; as his successor in the sheriff’s office, about a year after Hubbard left the office, found among some waste papers in a pigeon-hole in his office, a mortgage purporting to be from Dever and wife to Hubbard as sheriff, to secure a loan of this amount, to be paid as required by the order of court; but the land described in the mortgage was only about $300 in value, the mortgage! was not .left for record or recorded, and when found Dever had made an assignment under the insolvent laws.
But no such unexplained partial compliance with the order to loan by Hubbard, even if averred in the answer, could release either his liability as sheriff or the liability of his sureties. There is no error shown.

Judgment affirmed.